UTICA,
Aug. 1826.

Aymar
v.
Astor.

---

AYMAR and AYMAR *against* ASTOR.

Bear skins were received by the master of a vessel to transport from *New-Orleans* to *New-York,* and there to be delivered in good order and condition, *dangers of the seas excepted.*

On error from the C. P. of *New-York.*   Astor brought assumpsit against *Aymar* and *Aymar*, in the court below, for the value of certain bear skins, shipped on board the defendants' vessel at *New Orleans*, for *New-York*, but which were destroyed by rats on the voyage.

By the bill of lading, signed by the master, the receipt of the bear skins was acknowledged, to be delivered in

The skins being damaged by rats, in an action against the owners of the vessel upon the undertaking ; *held*, that evidence of mercantile usage and understanding, at *New Orleans* and *New-York*, that injuries by rats are considered and treated as perils of the sea, was inadmissible.

The master or owners of a vessel transporting goods on the high seas, are not common carriers, within the meaning of the rule, subjecting the latter to all losses or injuries, which arise from any other cause than the act of God, or the enemies of the country. And in an action against the master or owners for loss or damage of goods from any other cause, it should be submitted to the jury, upon the evidence, whether they used ordinary care and diligence.

good order and well conditioned to the plaintiff in *New-York, the dangers of the seas,* and of capture, excepted.

When they were delivered in *New-York,* they were damaged by rats ; and the parties went into evidence in the court below upon the question whether the vessel was prudently managed for the avoiding of rats, or whether the master had been negligent in that respect.

The defendants offered to prove, that both at *New-Orleans* and *New-York,* damage by rats was considered, and treated by the usage of trade, and merchants, as a peril of the sea.   The court below excluded the evidence, and the defendants excepted.

The court charged the jury that the defendants were common carriers, and liable as such for damage done, unless by the act of God ; or the perils of the sea, excepted in the bill of lading.   That damage by rats was not a peril of the sea.   And the defendants excepted.

Verdict and judgment for the plaintiff below.

*D. Lord,* junior, for the plaintiffs in error.   The evidence of the mercantile meaning of the words, "perils of the sea," should have been received.   (4 *East,* 130.  2 *John. Rep.* 335, 549.  7 *id.* 385.  5 *B. & P.* 213.   *Park on Ins.* 44, *& seq.   Abbot on Ship.* pt. 3, ch. 4, s. 2.)

It is true, *Hunter* v. *Potts,* (4 *Campb.* 203,) held that a loss by rats was not a peril of the sea ; but that case went on *Rohl* v. *Parr,* (1 *Esp. Rep.* 445,) which presented a question of fact, and was decided by a jury.   *Dale* v. *Hall,* (1 *Wils.* 281,) is directly opposed to *Ganiques* v. *Cox,* (1 *Bin.* 592, 598.)

At any rate, the liability of the defendants below should have been put to the jury upon the question of actual negligence.

*D. B. Ogden,* contra, relied on *Rohl* v. *Parr,* (1 *Esp. Rep.* 445,) *Hunter* v. *Potts,* (4 *Campb.* 203,) and *Dale* v. *Hall,* (1 *Wilson,* 281,) as in point for the defendant in error.   He also cited *Phil. on Ins.* 251 ; *Abbot on Ship.* pt. 3, ch. 3, s. 9.

UTICA,
Aug. 1826.

Aymar
v.
Astor.

UTICA,
Aug. 1826.

Aymar
v.
Astor.

SAVAGE, Ch. Justice; said, he thought the evidence of mercantile understanding and usage as to the meaning of the words " perils of the sea," should have been received. And he cited and commented upon various authorities as warranting this. (*Anderson* v. *Pitcher*, 2 *B. & P.* 164. *Scott* v. *Bourdillion*, 5 *id.* 213. *Coit* v. *Com. Ins. Co.* 7 *John.* 389. *Frith* v. *Barker*, 2 *id.* 335.)

As to the question of liability, independent of the evidence offered, he said, the terms " perils of the sea," as used in contracts of insurance, do not include those losses which may be prevented by proper care. In a late case, (*Hunter* v. *Potts*, 4 *Campb.* 203,) Lord *Ellenborough* decided, that a loss arising from rats eating holes in the ship's bottom, is not within the perils insured against by the common form of a policy.

The cases decided against common carriers, are said by Mr. *Phillips*, (*Tr. on Ins.* 250,) not to be applicable in actions depending on the law of marine insurance. The master of a vessel at sea, he does not consider within the term *common carrier*.

It is the duty of the master to take all possible care of the goods on board ; and though the master or owners are not liable for injury by a leak in the ship, by tempests, or other accident, (*Abb. on Ship. pt.* 3, *ch.* 3, *s.* 9,) yet they are liable, if the leak be occasioned by rats. It was so decided in *Dale* v. *Hall*, (1 *Wils.* 281,) which was an action against a hoyman, for so negligently carrying goods, that they were spoiled. It was shewn that the injury was occasioned by rats eating a hole in the vessel, and the defendant had a verdict, which the court set aside ; *Lee*, C. J. saying, " every thing is negligence in a carrier, which the law does not excuse ; and he is answerable for goods the instant he receives them into his custody ; and in all events, except they happen to be damaged by the act of God, or the king's enemies, and a promise to carry safely, is a promise to keep safely." Sir *William Jones* says, (*Tr. on Bail.* 105,) " but the true reason of this decision is not mentioned by the reporter. It was, in fact,

UTICA,
Aug. 1826.

Aymar
v.
Astor.

*at least ordinary* negligence to let a rat do such mischief in the vessel."

This case is not supposed by *Phillips* or *Abbott*, (*Tr. on Ship. part* 3, *ch.* 3, *s.* 9,) to be inconsistent with the ancient rule, that the master is not liable for such an injury, if he provides against it by taking a cat on board at the commencement of the voyage.

The master of a vessel, I apprehend, is not responsible like a common carrier, for all losses, except they happen by the act of God, or the enemies of the country.

A carrier for hire, ought, by the general rule, to be responsible only for ordinary neglect. (*Jones on Bail.* 103.) The liability did not exist formerly for robbery. That became necessary, to guard against collusion, by the carrier, with robbers. If the same liability attached to the master and owners of a vessel, it was useless to enquire, (as was done in this case in the court below,) whether it was proper for the master to smoke his vessel, to destroy vermin.

The true question to be submitted to the jury was, whether the master had used ordinary care and diligence in carrying the goods in question. Whether a cat is a sufficient precaution against rats ; or whether smoking the vessel is the proper and more efficacious remedy against this evil, is a proper subject for the consideration of the jury. Formerly, taking a cat on board, was accounted ordinary diligence, and excused from damages. If subsequent experience has shewn a better remedy, it is the duty of masters and owners to adopt it.

WOODWORTH and SUTHERLAND, Js. were of the opinion that the evidence of mercantile usage and understanding, was properly overruled by the court below ; but they agreed with the chief justice in his opinion upon the other point.

The judgment was, therefore, reversed, on the ground that the court erred in charging the jury, that the defendants below were common carriers, and liable as such.

Judgment reversed.