**George H. Erickson, Appellee, v. Graham & Daniel Company, Appellant.**

**Gen. No. 27,275.**

BAILMENTS—*leaving motor truck standing in city street unguarded against theft as negligence.* It is negligence for a driver to leave a Ford delivery truck for which switch keys are interchangeable, unguarded in a congested retail section of Chicago on the public street for a period of four minutes without locking it except by the removal of the ordinary switch key therefrom; and the owner of such truck, a cleaner and dyer, is liable to the owners, for the value of articles stolen therefrom after the truck had been stolen and driven off.

Appeal by defendant from the Municipal Court of Chicago; the Hon. HENRY M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Affirmed. Opinion filed January 10, 1923.

MAX KRAUSS, for appellant.

HANS TORGERSEN, for appellee.

MR. JUSTICE TAYLOR delivered the opinion of the court.

The plaintiff, George H. Erickson, having delivered an overcoat to the defendant corporation, Graham & Daniel Company, to be cleaned, and the defendant having failed to return the overcoat, brought suit and recovered a judgment in the sum of $75. This appeal is therefrom.

The case was tried before the trial judge without a jury. The facts, which are uncontroverted, are as follows:

1. That the defendant was at the time of the wrong complained of in the business of cleaning and dyeing wearing apparel at 4241 West Harrison street, in the City of Chicago.

2. That automobiles, known as Ford delivery trucks with closed bodies, were used by the defendant to collect from its customers garments to be cleaned and to return the same to the customers after they were cleaned.

3. That on or about September 28, 1920, defendant's driver received from the plaintiff an overcoat and took the same to the defendant's place of business in such a truck.

4. That the defendant cleaned the overcoat and on September 30, A. D. 1920, placed the overcoat, together with other garments, in the truck in which it was received; that in the course of delivering the garments in the truck, the defendant's driver stopped the truck on State street in front of the premises known as 310 South State street, which is in the very busy retail business section of the City of Chicago; that said driver left said truck for about four minutes in order to make a delivery at the store known as Beeson's; that it required that length of time to make said delivery; that before leaving said truck to make said delivery the driver locked the body of the truck and pulled out the switch key so that the motor could not

be started without the use of a duplicate key.   All Ford trucks are equipped with uniform switch keys.

6.   That the next stop on the route of the driver was the plaintiff's place of business; that while the driver of the defendant's truck was at Beeson's, the defendant's truck, containing the overcoat delivered to it by the plaintiff, was stolen by unknown persons; that the defendant immediately reported the theft to the police department of the City of Chicago and made diligent search to find the truck and the overcoat; that on the afternoon of the following day, the truck was found by the police of the City of Chicago on Winchester avenue near its intersection with Adams street, in the City of Chicago, in a damaged condition and all of the articles in the truck, including the overcoat of the plaintiff, gone, undoubtedly having been taken by the thieves who stole the truck.

7.   That the plaintiff made a demand of the defendant for the overcoat but that the defendant did not have the overcoat of the plaintiff and could not deliver the same to him.

8.   That the reasonable value of the overcoat was seventy-five ($75) dollars.

From the foregoing it will be seen, therefore, that the sole question here is whether the defendant was negligent, and, inasmuch as all the evidence which was introduced is uncontroverted, it becomes unnecessary to go into the involved legal question which has arisen in so many bailment cases as to the burden of proof. See note 6 Corpus Juris, page 1158.   *Nichols v. Union Stock Yards & Transit Co.,* 193 Ill. App. 14.

Does the evidence show negligence on the part of the defendant?   A motor car—truck or automobile—is an instrumentality for convenient and quick transportation, of recent invention, manfacture and use.   It is a machine quite different from a horse vehicle, and its use calls for a different rule of conduct.   It has practically annihilated short distances and is of such con-

venience and flexibility that it may be stolen with much greater ease, especially in the heart of a large city, than the slower going horse vehicle. Here, the evidence is that the driver locked the body of the truck and pulled out the switch key so that the motor could not be started without the use of a duplicate key. It was a Ford truck and the evidence shows that all Ford trucks have uniform switch keys. The truck was left, according to the evidence, in the congested retail section of Chicago, for four minutes, after being locked and the switch key taken out by the driver.

It is well known that in large cities many motor cars are stolen every day, and, that being true, it follows as a consequence, that considerable care is necessary and also expected to prevent such property from being stolen. In *Siegel v. Eisner,* 138 N. Y. Supp. 174, the defendant hired a horse belonging to the plaintiff and hitching it to his own wagon drove it to a building in New York City where he had some work to do. He tied the wheels together with a rope and attached a weight to the horse's bit, and, thus secured, the horse was watched by one of his employees from then until the employee went into the building to bring another employee a pail of paint, during which interim the horse was unguarded. The horse and wagon were stolen while the employee was inside the building. In that case the court said: "It is a matter of common knowledge that unguarded horses are frequently stolen from the streets. There is no difficulty connected with the task, and it takes little time to do it. The loss by theft was not an accident naturally incident to the use of the horse under the manner contracted for in this case, but its loss by theft was due to failure to properly guard it; and in my opinion a person, being the owner or bailee of a horse, who leaves it unguarded on the streets of a large city, where the temptation to take anything of value that can be carried away is great and pressing, exposes it

to possible theft and does not exercise the care that a prudent man should exercise to protect it from the risk of that loss in that manner.''

Certainly, if the bailee in the *Eisner* case, *supra,* was guilty of negligence, *a fortiori,* it would be negligence to leave a motor truck as it was left in the instant case.

We are of the opinion that leaving the Ford truck unguarded, in a congested retail section of Chicago, for such a length of time, and merely locking it with a key common to all Ford trucks, was not only negligent but highly imprudent, especially, when, knowing as the driver did, it contained the property of others for which his employer was responsible.

Finding no error in the record the judgment is affirmed.

*Affirmed.*

THOMSON, P. J., and O'CONNOR, J., concur.